**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| In re:<br><br>VALERIA V. GUNKOVA,<br><br>Debtor. | Case No. 23-11261 (BFK)<br>Chapter 11 |
| HARRY KAMIN,<br>Individually and on behalf of BNG Group LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VALERIA V. GUNKOVA,<br><br>Defendant. | Adv. Proc. No. 23-01062-BFK |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR SANCTIONS DUE TO DEFENDANT'S SPOLIATION OF EVIDENCE**

Plaintiff Harry Kamin ("**Mr. Kamin**"), individually and on behalf of Plaintiff BNG Group LLC ("**BNG**" and/or the "**Company**"), hereby files this Memorandum in Support of Plaintiffs' Motion for Sanctions Due to Defendant's Spoliation of Evidence (the "**Motion**") requesting the Court enter an Order granting sanctions against Defendant Valeria Gunkova ("**Ms. Gunkova**") due to her spoliation of evidence. In support thereof, Mr. Kamin states as follows:

Marc E. Albert, No. 26096
Tracey M. Ohm, No. 77150
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3008
marc.albert@stinson.com
tracey.ohm@stinson.com

Bethany R. Benes, No. 85408
BETHUNE BENES, PLLC
3975 Fair Ridge Drive
South Suite 246
Fairfax, Virginia 22033
Tel.: (703) 260-9325
bbenes@bethunebenes.com

*Counsel for Harry Kamin, individually and on behalf of BNG Group LLC*

## I. BACKGROUND

Plaintiff Mr. Kamin is a 50% Class A Member of entity Plaintiff BNG. Defendant Ms. Gunkova is the other 50% Class A Member of BNG. While Mr. Kamin understood that Ms. Gunkova managed the day-to-day operations of BNG, including management of the Company's books, records, and financial accounts, Mr. Kamin and Ms. Gunkova agreed that each was a co-Manager and that decisions regarding the Company required the consent of both members.[1] In or around December 2020, Mr. Kamin learned that Ms. Gunkova had been violating the terms of BNG's operating agreement, including but not limited to Ms. Gunkova's unilateral actions to hire employees, enter into contracts, and attempt to sell the commercial property owned by BNG (the "**Building**"). Mr. Kamin also learned that Ms. Gunkova's partner Jacob Bogatin ("**Mr. Bogatin**"), who assisted Ms. Gunkova in operating BNG, had previously been indicted by a grand jury on no less than forty-five (45) federal felony charges including (i) RICO conspiracy, (ii) wire fraud, (iii) mail fraud, (iv) securities fraud, (v) filing false reports with the SEC, (vi) falsification of books and records, (vii) money laundering conspiracy, (viii) and money laundering.

After repeatedly being shut out of Company business and after learning of Mr. Bogatin's pending felony fraud charges, Mr. Kamin became increasingly concerned with his investment in BNG. Mr. Kamin demanded that Ms. Gunkova and Mr. Bogatin provide Mr. Kamin full access to BNG's bank accounts and company records. Ms. Gunkova refused. On February 10, 2021, Mr. Kamin, by counsel, sent Ms. Gunkova a letter pursuant to Va. Code § 13.1042 (the "**Derivative Demand Letter**"), a copy of which is attached hereto as **Exhibit A**. The Derivative Demand

[1] In September 2023, Mr. Kamin filed a Motion with the Bankruptcy Court asking to remove Ms. Gunkova from management of BNG to preserve and protect BNG during the pendency of her personal bankruptcy case. On October 23, 2023, Mr. Kamin and Ms. Gunkova agreed to appoint a Chief Restructuring Officer ("**CRO**") to have full control of the management and operations of BNG. The Court approved the appointment of Angela Shortall as BNG CRO by Order dated November 9, 2023.

expressly warned of anticipated litigation. Ms. Gunkova received the Derivative Demand, and by counsel, responded on February 18, 2021, denying that Mr. Kamin was a 50% member of BNG. Contrary to the parties' operating agreement (including the version provided to Mr. Kamin by Ms. Gunkova and Mr. Bogatin in January 2021), and documents submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank, Ms. Gunkova asserted that Mr. Kamin is only a 20% Class A Member, is not co-Manager, and is not entitled to any Company information or management.

In March 2021, Mr. Kamin filed the lawsuit of *Kamin v. Gunkova;* Case No. CL-21-1557 (the "**Loudoun Case**") against Ms. Gunkova in the Loudoun County Circuit Court of Virginia ("**Loudoun Court**"). Mr. Kamin issued numerous discovery requests to Ms. Gunkova in the Loudoun Case. Ms. Gunkova failed to comply with her discovery obligations throughout the course of the Loudoun Case, and accordingly, the Loudoun Court entered Orders on: (i) June 7, 2021, (ii) August 4, 2021, and (iii) March 18, 2022, compelling Ms. Gunkova to provide all discoverable information pursuant to Mr. Kamin's requests (the "**Compel Orders**").[2] Ms. Gunkova failed to comply with the Loudoun Court's Compel Orders.

In addition, on December 1, 2021, Mr. Kamin appeared in person for a meeting of the members at the Building and brought forensic expert J. Christopher Racich to conduct a forensic analysis of BNG's computers. Ms. Gunkova refused to allow Mr. Kamin or his expert access to the computers. Mr. Kamin repeated his request on December 13, 2021, and again Ms. Gunkova refused.

As a result of Ms. Gunkova's persistent discovery violations and her refusal to allow Mr. Kamin access to BNG records, Mr. Kamin filed a Motion for Sanctions and to Compel Inspection of Electronic Devices for Forensic Analysis (the "**Forensic Motion**") on September 9, 2022. A

[2] As discussed below, the Loudoun Court subsequently entered a further Order compelling Ms. Gunkova to produce documents and data on May 4, 2023. In total, the Loudoun Court entered five compel orders against Ms. Gunkova.

copy of the Forensic Motion (accompanying exhibits omitted) is attached hereto as **Exhibit B.** The Motion specifically requested that Ms. Gunkova be compelled to turn over all electronic devices and storage media containing and/or used to conduct business on behalf of BNG (the "**Devices**"). On October 25, 2022, the Court granted the Forensic Motion and entered an Order (the "**Forensic Order**") requiring Ms. Gunkova to turn over all Devices and take certain steps with regards to the forensic process within certain time frames. A copy of the Forensic Order is attached hereto as **Exhibit C.** Pursuant to the Forensic Order, Mr. Kamin, by counsel, identified the "**Search Terms**" to be applied to each of the Devices on November 1, 2022. A copy of the Search Terms is attached hereto as **Exhibit D.**

Ms. Gunkova failed to comply with the majority of Forensic Order as follows:

***(a) Ms. Gunkova Failed to Identify All Devices***

First, the Forensic Order required Ms. Gunkova to identify all Devices on or before November 1, 2022. On November 1, 2022, Ms. Gunkova identified only five (5) Devices. Ultimately, it was learned that there were at least thirty-four (34) responsive Devices, meaning that Ms. Gunkova failed to identify twenty-nine (29) Devices on November 1, 2022 in compliance with the Court's Order.

***(b) Ms. Gunkova Failed to Produce All Devices***

Second, the Forensic Order required Ms. Gunkova to produce all Devices for forensic imaging and/or copying on or before November 8, 2022. Ms. Gunkova failed to produce all Devices as required by the Court. Specifically, on November 22, 2022, Ms. Gunkova produced only eight (8) Devices: four Dell Desktop computers, two iPhones, and two iCloud accounts. An analysis of the eight (8) Devices revealed:

i. at least sixteen (16) USB devices had been attached but were not identified or turned over by Ms. Gunkova as required by the Order; and

ii. at least three external hard drives were subject to the Forensic Order that had not previously been identified or turned over by Ms. Gunkova.

Only after being made aware of the forensic findings as to additional Devices, Ms. Gunkova then produced nineteen (19) additional USB Devices that were not previously identified under the Order on December 14, 2022. Ms. Gunkova did not turn over any external hard drives at that time. On December 16, 2022, Ms. Gunkova provided access to only one external hard drive, yet it did not match the make/model/serial number of any of the previously identified external hard drives revealed in the analysis.

Finally, Ms. Gunkova was deposed on May 9, 2023 and revealed for the first time under oath that an email address of "BNGGroup46@gmail.com" was used for BNG business and that Ms. Gunkova still had access to the account. Yet Ms. Gunkova failed to provide any access to this newly identified account prior to her deposition and therefore no documents or data had been retrieved from this account.

***(c) Ms. Gunkova Unreasonably Delayed the Turnover of Results***

Third, the Forensic Order required the unprivileged results of the forensic examination to be provided to counsel for Mr. Kamin. However, Ms. Gunkova did not authorize the turnover of the unprivileged results until April 18, 2023. As a result, Mr. Kamin did not have <u>any</u> results of the forensic process for nearly six months.

***(d) Ms. Gunkova Failed to Produce a Proper Privilege Log***

Fourth, the Forensic Order required Ms. Gunkova to log any materials alleged to be privileged or non-responsive pursuant to Virginia Supreme Court Rule 4:1. Notwithstanding, as

of April 7, 2023, Mr. Kamin had not received a Privilege Log from Ms. Gunkova, and accordingly, Mr. Kamin filed a separate Motion to Compel requesting the Court compel the Privilege Log by a date certain. On May 1, 2023, the Court granted Mr. Kamin's Motion to Compel Forensic Results and ordered Ms. Gunkova to produce her Privilege Log on or before May 15, 2023.

Pursuant to Virginia law, a privilege log must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Va. Sup. Ct. R. 4:1(b)(6)(i). "Generally, e-mail within a particular line of discussion must be analyzed separately for privilege purposes…. [T]o be covered by the attorney-client privilege, a communication must have been *primarily* for legal advice, not business advice. *In re Subpoenas 2019R00561-A0001 Through 2019R00561-A0036,* 2022 WL 1693712, *7 (W.D. Va. 2022). A voluntary disclosure by the client to a third-party will waive the privilege for all other communications relating to the same subject matter. *Id.* at *12. For documents that are not communications, the identity of the author or custodian of the document is necessary to assess the validity of the privilege claim. *Id.*

On May 15, 2023, Ms. Gunkova, by counsel, produced her Privilege Log listing the search results that Ms. Gunkova withheld from production on the basis of privilege. Ms. Gunkova's Privilege Log failed to describe with required sufficiency the nature the documents and communications withheld by Ms. Gunkova. Ms. Gunkova also:

i. failed to describe with any specificity 16,733 attachments to emails that she withheld;

ii. withheld communications with *other* lawyers, including communications in which Ms. Gunkova was not even a party to the communication; and

iii. withheld communications with BNG's tax preparer, Alan Bassman, on the basis of "Email re attorney advice", including emails in which no attorney was a party to the communication.

***(e) Ms. Gunkova Deleted Data and Information During the Pendency of Litigation***

Finally, as set forth in more detail in the expert report attached hereto as **Exhibit E** and incorporated herein, once the forensic process was complete, it was determined that Ms. Gunkova performed multiple rounds of data destruction on numerous Devices after each of the following relevant dates:

i. Mr. Kamin's initial demand letter was sent to Ms. Gunkova on February 10, 2021;

ii. Mr. Kamin's Complaint was filed on March 8, 2021;

iii. The Loudoun Court's Compel Order was entered on June 7, 2021;

iv. The Loudoun Court's Compel Order was entered on August 4, 2021;

v. The Loudoun Court's Compel Order was entered on March 18, 2022;

vi. Mr. Kamin's Forensic Motion was filed on September 9, 2022;

vii. the Forensic Order was entered on October 25, 2022;

viii. Search Terms were identified on November 1, 2022;

ix. the first turnover was scheduled on November 16, 2022 to occur, and did occur, on November 22, 2022;

x. the second turnover was scheduled on December 8, 2022 to occur, and did occur, on December 14, 2022.

On July 14, 2023, Mr. Kamin filed a Motion for Sanctions and Spoliation in the Loudoun Case. On July 27, 2023, the Loudoun Court scheduled the Motion for hearing. Five days later, on August 3, 2023, Ms. Gunkova filed her voluntary petition for bankruptcy in this Court (Case No. 23-11261-BFK), resulting in an automatic stay of the Loudoun Case (including the Motion for

Sanctions and Spoliation). On October 10, 2023, Mr. Kamin, individually and derivatively on behalf of BNG, filed proofs of claim in Ms. Gunkova's bankruptcy case based on the causes of action in the Loudoun Case. The claims are reflected in the Claims Register of Ms. Gunkova's bankruptcy case as follows: i) Claim No. 13 in the amount of $26,976,200.68 filed by Mr. Kamin individually; and ii) Claim No. 14 in the amount of $4,932,685.56 filed by Mr. Kamin derivatively on behalf of BNG.

On October 30, 2023, Mr. Kamin filed the instant action, seeking a determination of nondischargeability relating to the claims for monetary damages asserted in the Loudoun Case. The nondischargeability claims assert that Ms. Gunkova engaged in numerous instances of fraud and willful and malicious injury by stealing Mr. Kamin's identity and forging his signature on countless documents to obtain loans to benefit Ms. Gunkova, her related entities, and Mr. Bogatin. Mr. Kamin issued document requests to Ms. Gunkova in this adversary proceeding (the "**Requests**"). Ms. Gunkova's discovery responses confirmed that she did not have any further documentation for at least one hundred and nineteen (119) of the Requests, including three Devices identified by Vestigant as being subject to the Forensic Order. Copies of Ms. Gunkova's responses are collectively attached hereto as **Exhibit F**. Ms. Gunkova's responses evidence that Ms. Gunkova failed to preserve evidence when she was under an obligation to do so. Ms. Gunkova's intentional spoliation of evidence has resulted in the loss of relevant information that cannot be restored or replaced. As a result, Mr. Kamin and BNG are severely prejudiced in the pursuit of their claims, and Ms. Gunkova should be sanctioned.

## II. ARGUMENT

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*Quetel Corp. v. Hisham Abbas,* 819 Fed. Appx. 154*,* 155-156 (4th Cir. 2001). "[S]poliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" *Taylor v. Mitre Corp.,* 2012 U.S. Dist. LEXIS 163854 (E.D. Va. 2012) (citing *Hodge v. Wal-Mart Stores, Inc*., 360 F.3d 446, 450 (4th Cir. 2004)). A court derives its authority to impose sanctions for spoliation from many sources. First, the court has an "inherent power to control the judicial process and litigation, a power that is necessary to redress conduct 'which abuses the judicial process.'" Second*,* the court may impose sanctions if the spoliation violates a direct court order. Fed. R. Civ. Pro. 37(b); *see also Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 517 (D. Md. 2010). Finally, a court may impose sanctions if a party fails to preserve electronically stored information ("**ESI**"). *See* Fed. R. Civ. Pro. 37(e). When imposing spoliation sanctions, "the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Vodusek v. Bayliner Marine Corp*., 71 F.3d 148, 156 (4th Cir. 1995). Judgment in favor of a party may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately pursue its case. *Silvestri v. GMC,* 271 F.3d 583, 593(4th Cir. 2001).

***a. Ms. Gunkova Had a Duty to Preserve Evidence.***

The duty to preserve exists for a defendant at the latest when the defendant is served with the complaint. *Stanley,* 269 F.R.D. at 522. However, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. GMC,* 271 F.3d 583, 591 (4th Cir. 2001). "Once a party reasonably anticipates litigation a mandatory litigation hold goes into place. The implementation of the litigation hold suspends the 'routine document retention/destruction policy' of relevant documents." *Schlossberg v. Abell (In*

*re Abell)*, 2016 Bankr. LEXIS 1690 (Bankr.D. Md. 2016). A future litigant is not required to make such a request, and a failure to do so does not vitiate the independent obligation of an adverse party to preserve such information. *Stanley,* 269 F.R.D. at 522.

The duty to preserve evidence includes an obligation to identify, locate, and maintain information that is relevant and applies to evidence in the party's control and in the hands of a non-party when the party has a right, authority, or practical ability to obtain the documents from the non-party. *Stanley,* 269 F.R.D. at 523. A party may be sanctioned for spoliation where the party had a duty to preserve material evidence and willfully engaged in conduct that resulted in the loss or destruction of such evidence at a time when the party knew—or should have known—that the destroyed evidence was or could be relevant in litigation. *Quetel Corp.* at 156 (citing *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)). "A party is not relieved of this responsibility merely because the [party] did not itself act in bad faith and a third party to whom [the party] entrusted the evidence as the one who discarded or lost it." *Schlossberg,* 2016 Bankr. LEXIS 1690 at *64. "In determining whether and at what point such a duty to preserve arose, the court shall include in its consideration the totality of the circumstances, including the extent to which the party or potential litigant was on notice that specific and identifiable litigation was likely and that the evidence would be relevant." Va. Code § 8.01-379.2:1.

Here, Ms. Gunkova had an obligation to preserve evidence no later than February 2021 when Mr. Kamin sent his initial Derivative Demand Letter. In fact, the Derivative Demand letter expressly warned, "*Please note that if this information is not supplied as requested in this letter, Mr. Kamin will be forced to take legal action to protect his interests….*" *see* **Ex. A,** p. 3. At the very latest, Ms. Gunkova's obligation to preserve was triggered when Mr. Kamin filed his Loudoun Case on March 8, 2021. Ms. Gunkova's duty to maintain and not delete evidence

continued throughout the Loudoun Case, with discovery requests, numerous Compel Orders, and the Forensic Order, and into her bankruptcy proceedings.

***b. Ms. Gunkova Intentionally Breached Her Duty to Preserve.***

"A party breaches its duty to preserve relevant evidence if it fails to act reasonably by taking 'positive action to preserve material evidence.'" *Stanley,* 269 F.R.D. at 524. As courts are intended to decide a case on its merits, the fact-finder must review the facts to discern the truth. If information is not preserved, the truth cannot be uncovered. *Id* at 526. In the Fourth Circuit, a court may impose some form of sanctions for spoliation based on bad faith, willfulness, gross negligence, or even ordinary negligence. *Id* at 529. Even if not egregious, "a sympathetic though negligent party whose want of diligence eliminates the ability of an adversary to prove its case may warrant case-dispositive sanctions, because the damage to the truth-seeking is absolute." *Id* at 526. The Fourth Circuit has established that the "the volume and timing" of the spoliation may be "telling." *Id* at 531. A court should rely on its "gut reaction based on years of experience as to whether a litigant has complied with its discovery obligations and how hard it worked to comply." *Id* at 529.

Negligence, or "culpable carelessness," is "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation[.]" *Stanley,* 269 F.R.D. at 529, citing Black's Law Dictionary 846 (Bryan A. Garner ed., abridged 7th ed., West 2000). Negligence is contrasted with "conduct that is intentionally, wantonly, or willfully disregardful of others' rights." *Id.* Gross negligence, which is something more than carelessness, "'differs from ordinary negligence only in degree, and not in kind." *Id.* Regarding preservation of evidence, if either the failure to collect or preserve evidence or the sloppiness of the review of evidence causes the loss or destruction of relevant information, the spoliator's actions may amount to negligence,

gross negligence, or even intentional misconduct. *Id.* Finally, "willfulness" is defined as "intentional, purposeful, or deliberate conduct" and includes actions such as deliberate attempts to wipe hard drives or to destroy relevant evidence by other technological or manual means. *Stanley,* 269 F.R.D. at 530. "Conduct that is in bad faith must be willful, but conduct that is willful need not rise to bad faith actions. While bad faith requires 'destruction for the purpose of depriving the adversary of the evidence, for willfulness, it is sufficient that the actor intended to destroy the evidence." *Id.*

Here, Ms. Gunkova's persistent actions over the course of many years illustrates her pattern of litigation abuse and disrespect for the judicial process. Ms. Gunkova acted recklessly and with the intent to deprive Mr. Kamin and BNG of evidence when she (i) failed to implement a litigation hold after receiving the Derivative Demand; (ii) failed to preserve evidence relevant to the claims asserted by Mr. Kamin; (iii) withheld evidence on a faulty claim of privilege; (iv) intentionally deleted relevant data and documentation, including electronic files responsive to the search terms of the Forensic Order and while under numerous court Orders to preserve and produce such data; and (v) destroyed or refused to turnover three forensic Devices for inspection. Each of Ms. Gunkova's actions constitute a breach of her duty to preserve material evidence.

While Ms. Gunkova has in the past attempted to blame an alleged "malware attack" for her lack of production of certain documents (namely, the originals of the documents alleged by Mr. Kamin to be forged and at issue in this case), Ms. Gunkova's intentional destruction of evidence cannot be brushed over. In fact, the forensic analysis of the Devices reveals the magnitude of Ms. Gunkova's willful destruction of evidence and the timing of her destruction that tied directly to court orders to preserve evidence, including:

i. First, on April 10, 2021, a month after the Loudoun Case was filed, Ms. Gunkova attached a Western Digital USB hard drive, Volume Serial number of 28CEE36F ("**1st Hard Drive**") to the Device identified as IT001 ("**IT001**"). A folder named "BNG" was accessed from the 1st Hard Drive with at least 28 files/folders within the "BNG" folder. To date, Ms. Gunkova has failed to produce the 1st Hard Drive and her most recent discovery responses admit that "Ms. Gunkova is unable to locate [the Device]". **Ex. F**, Gunkova response to Request No. 81.

ii. On June 16, 2022, after had been pending for more than a year, Ms. Gunkova downloaded, installed, and ran CCleaner[3] to the Device identified as IT002 ("**IT002**"). Ms. Gunkova's actions disregarded, *inter alia,* Mr. Kamin's demand for inspection in December 2021 and the Loudoun Court's three Compel Orders.

iii. On July 3, 2022, Ms. Gunkova downloaded, installed, and ran CCleaner to the Device identified as IT005 ("**IT005**"). Ms. Gunkova ran the software on IT005 on July 3, 2022 and again on August 9, 2022.

iv. After the Computer Motion was filed on September 9, 2022 and while pending a hearing to be held on October 25, 2022. Ms. Gunkova downloaded, installed, and ran CCleaner on the Device identified as IT001 on October 1, 2022. Ms. Gunkova ran the destruction software three times on October 1, 2022.

v. Similarly, Ms. Gunkova ran CCleaner on IT002 on October 1, 2022, October 11, 2022, October 14, 2022, October 19, 2022, October 20, 2022, October 21, 2022, October 22, 2022, October 23, 2022, and October 24, 2022.

[3] CCleaner is an application that is designed, among other features, to remove data from a computer and/or other media. Data can be targeted for destruction, including files and folders, temporary files, internet history, and other data sources typically containing historical usage of a computer.

vi. After the Forensic Order was entered, Ms. Gunkova then ran CCleaner again on IT002 on October 25, 2022.

vii. On October 26, 2022, Ms. Gunkova then ran CCleaner again on IT002. That same day, Ms. Gunkova also attempted to delete an entire user profile and 84,717 files by placing them in the Recycle Bin on IT002 and "emptying" the Recycle Bin. Ms. Gunkova also ran CCleaner again on IT005.

viii. On October 28, 2022, Ms. Gunkova attached a USB thumb drive, Volume Serial number of 3017966403&0 ("**Thumb Drive**") to the Device identified as IT003 ("**IT003**"). To date, Ms. Gunkova has failed to produce the Thumb Drive and her most recent discovery responses admit that "Ms. Gunkova is unable to locate [the Device]". **Ex. F**, Gunkova response to Request No. 83.

ix. After the Search Terms were identified on November 1, 2022, Ms. Gunkova re-downloaded, reinstalled, and reran CCleaner to IT005 on November 8, 2022. Ms. Gunkova then intentionally utilized the secure delete function of CCleaner to permanently override at least 122,563 files to ensure the data could not be recovered or identified.

x. On Ms. Gunkova ran CCleaner again on IT001 on November 10, 2022.

xi. Also on November 10, 2022, Ms. Gunkova attached a Western Digital USB hard drive, Volume Serial number of 64D14DA0 ("**2nd Hard Drive**") to IT003. To date, Ms. Gunkova has failed to produce the 2nd Hard Drive and her most recent discovery responses admit that "Ms. Gunkova is unable to locate [the Device]". **Ex. F**, Gunkova response to Request No. 82.

xii. On December 14, 2022, approximately one hour before turning the device over for forensic inspection, Ms. Gunkova ran CCleaner on the Device identified as IT027 (**"IT027"**) to overwrite Unallocated Space totaling 7.4GB.

The volume and timing of Ms. Gunkova's spoliation is telling. In sum, between February 2021 when the Derivative Demand Letter was sent and November 2022 after the Forensic Order was entered, Ms. Gunkova permanently destroyed relevant data and documentation through the use of CCleaner no less than twenty-seven (27) times. In addition to the use of CCleaner, Ms. Gunkova attempted to manually delete an entire user profile containing approximately 85,000 artifacts and failed to produce three Devices containing relevant data. While the full extent of Ms. Gunkova's destruction is unknown, it was determined that at least 122,563 files and folders were intentionally and permanently deleted. These files are not recoverable. It is clear that Ms. Gunkova took repeated, deliberate measures to prevent the discovery of relevant data and that such misconduct not only arises to "willfulness", but also to bad faith.

Ms. Gunkova's destruction of evidence was compounded by her failure to comply with numerous Compel Orders. Specifically, Ms. Gunkova was ordered by the Loudoun Court to produce certain documents in response to Mr. Kamin's discovery requests. Yet whether because Ms. Gunkova just blatantly disregarded her obligations or she could not comply because she had already deleted the information, Ms. Gunkova did not turn over the documentation. Ms. Gunkova's deficiencies as of the filing of her bankruptcy action are set forth in the chart attached hereto as **Exhibit G.** Mr. Kamin then sought such documents in discovery in this case. Ms. Gunkova admitted in her recent responses that, at the very least, she failed to preserve key information, and no longer had possession, custody, or control of relevant information compelled to be produced here, including:

i. Loan applications, supporting documentations, statements, and payments for SBA loans obtained by Ms. Gunkova using Mr. Kamin's identity;

ii. Loan applications, supporting documentations, statements, and payments for private financial loans obtained by Ms. Gunkova using Mr. Kamin's identity;

iii. Documents submitted to various banks via DropBox or other electronic upload means in support of her numerous attempts to obtain loans (including using Mr. Kamin's identity);

iv. Documents sent by Ms. Gunkova using DocuSign to a broker relating to Ms. Gunkova's attempt to unilaterally sell the Building without Mr. Kamin's knowledge or consent;

v. Documents sent by Ms. Gunkova to her CPA, Alan Bassman, relating to BNG, including documents and Quickbooks files uploaded by Mr. Bogatin and sent via secure share links to the accountant; and

vi. The documents and ESI related to such documents that Mr. Kamin contends in this case to be forged by Ms. Gunkova.

Ms. Gunkova's spoliation of evidence was ongoing, violated her discovery obligations and numerous Compel Orders, and reveals her intentional effort to conceal and destroy information in furtherance of her fraudulent schemes at issue in the Loudoun Case and here.

***c. The Destroyed Data was Relevant, Resulting in Prejudice to Plaintiffs.***

"In the context of spoliation, lost or destroyed evidence is 'relevant' if 'a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Stanley,* 269 F.R.D. at 531. The loss of evidence must also be prejudicial to the party alleging spoliation. *Id.* "Prejudice can range along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof." *Id.* at 532. Generally, courts find prejudice where a party's ability to present its case or to defend is compromised. *Id.; see also Krumwiede v. Brighton Assocs., L.L.C.,* 2006 U.S. Dist. LEXIS 31669, at *10 (N.D. Ill. 2006) (noting that even if the files were only modified and not deleted, "the changes to the file metadata call the authenticity of the files and their content into question and make it impossible for [the defendant] to rely on them"). When the party alleging spoliation shows that the other party acted

willfully in failing to preserve evidence, the relevance of that evidence is presumed in the Fourth Circuit. *Stanley,* 269 F.R.D. at 532. "The reason relevance is presumed following a showing of intentional or willful conduct is because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts." *Vodusek v. Bayliner Marine Corp*., 71 F.3d 148, 156 (4th Cir. 1995).

As laid out in Section *b* above, Ms. Gunkova's willful, bad faith conduct allows this Court to presume relevance and prejudice. Even without the presumption, it is clear that the data destroyed by Ms. Gunkova was relevant to the claims asserted by the Plaintiffs. First, while at least 122,563 files were permanently destroyed making it impossible to determine what the files contained, the file names of other data *attempted* to be permanently deleted by Ms. Gunkova included terms responsive to the Search Terms under the Forensic Order. For example, files deleted by Ms. Gunkova included those named:

i. "Harry"

ii. "Harry D Kamin"

iii. "Financial Statements"

iv. "Signed documents"

v. "BNG Documents"

vi. "Members agreements and amedments" [sic]

vii. "Review and sign document(s)_DocuSign_files"

viii. "SBA- Disaster Loan Assistance_files"

ix. "carvell-SBA - Disaster Loan Assistance_files"

x. "PublishingSBA- Disaster Loan Assistance_files"

xi. "SNB SBA"

xii. New SBA"

xiii. "Loans Applications"

xiv. "1st Amendment.pdf"

xv. "2.2 signed Amendment..pdf"

xvi. "7.-09.29.2020 Amended BNG Operating Agreement.pdf"

xvii. "4. 5.16.2020 First Amendment to BNG Operating Agreement.pdf"

xviii. "3. -05.16.2020 Member Interes TransfAgreement.pdf"

xix. "5. -09.29.2020 Members Meeting.pdf"

xx. "Asset Contribution Agreement (1).docx".

*see* **Ex. E**.

The magnitude of Ms. Gunkova's spoliation is massive and results in substantial prejudice to Mr. Kamin and BNG to prove their claims. The deleted files contained the very information and fingerprints that would establish all or most of the elements of each of the counts in this action for fraud and forgery, including how, when, and where the documents were created and by whom. By running CCleaner on her Devices no less than twenty-seven (27) times while under a clear obligation to preserve evidence, Ms. Gunkova caused the relevant evidence to be destroyed, deleted, and with regards to at least 122,563 files, irretrievably spoliated. Furthermore, Ms. Gunkova's failure to preserve at least three other Devices containing relevant data results in prejudice, the extent of which can only be presumed as disastrous considering Ms. Gunkova's other willful and bad faith deletions. There can be no doubt that the loss of such large volumes of evidence, destroyed at key points when turnover of the data was not only expected, but known by Ms. Gunkova pursuant to court orders, is detrimental to Mr. Kamin's ability to prove the claims here, and therefore Mr. Kamin and BNG are substantially prejudiced.

***d. Severe Sanctions Are Appropriate***

Sanctions that a court may impose for spoliation include awarding attorney's fees and costs, granting an adverse inference instruction, precluding evidence, or imposing the harsh, case dispositive sanctions of dismissal or judgment by default. *Stanley,* 269 F.R.D. at 533-534. In determining what sanctions are appropriate for spoliation, the Court must consider the extent of prejudice, if any, along with the degree of culpability. The court may consider the party's prior discovery conduct, including misconduct in other cases. *In Mut. Fed. Sav. & Loan v. Richards & Assocs., Inc.*, 872 F.2d 88, 94 (4th Cir. 1989); *see also Schlossberg, supra* at *73-74.

In the Fourth Circuit, to order default judgment, the court must conclude *either* (i) that the spoliator's conduct was so egregious as to amount to a forfeiture of her claim or defense, *or* (ii) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the other party the ability to assert his case. *Id.* In its discretion, the court may order an adverse inference instruction, which informs a jury that it may draw adverse inferences from the loss of evidence, or the destruction of evidence by assuming that failure to preserve was because the spoliator was aware that the evidence would have been detrimental. *Id.* at 535; Fed. R. Civ. P. 37(e)(2)(B). The court may instruct the jury that "certain facts are deemed admitted and must be accepted as true"; impose a mandatory, yet rebuttable, presumption; or "permit[] (but . . . not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Id.* Less severe sanctions include costs, attorney's fees, and fines, which not only compensate the prejudiced party but also punish the offending party for its actions and deter the litigant's conduct. *Id.* In addition to a spoliation sanction, a court will award a prevailing litigant the reasonable costs associated with the motion plus any investigatory costs into the spoliator's conduct. *Id.*

"While a district court has broad discretion in choosing an appropriate sanction for spoliation, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001). The court must impose the least harsh sanction that can provide an adequate remedy, but it is also appropriate for a court to consider whether the sanctions it imposes will "prevent abuses of the judicial system" and "promote the efficient administration of justice." *Stanley,* 269 F.R.D. at 534. "Courts may order a default judgment or dismissal to 'send a strong message to other litigants, who scheme to abuse the discovery process and lie to the Court, that this behavior will not be tolerated and will be severely sanctioned.'" *Id.*

In *Schlossberg v. Abell (In re Abell),* 2016 Bankr. LEXIS 1690 (Bankr. Md. 2016), a serial fraudster debtor, along with his wife, engaged in a scheme to defraud creditors by camouflaging his ownership of ongoing businesses and properties to create the appearance that the assets were those of the wife when in fact, the debtor was the true owner. As a result of their scam, the debtor and his wife faced numerous pre-bankruptcy lawsuits. The debtor repeatedly ignored and abused his discovery obligations during the course of the lawsuits. In 2012, the DC Superior Court entered an "Imaging Order" for a forensic analysis of the debtor's electronic devices. The forensic analysis revealed that the debtor, through the use of his wife, utilized CCleaner to intentionally destroy data.

The debtor subsequently filed his Chapter 11 petition for bankruptcy in 2013 and a Chapter 11 Trustee was appointed. The Chapter 11 Trustee then brought an adversary proceeding against the debtor, and a second Imaging Order was entered by the bankruptcy court in 2014. The Trustee also filed a spoliation motion relating to the debtor's destruction of evidence, including the debtor's pre-bankruptcy spoliation. In determining the spoliation motion, the bankruptcy court found that

the pre-bankruptcy usage of CCleaner coincided with discovery motions and orders from the prior courts, including the 2012 "Imaging Order". The bankruptcy court found that the debtor's pre-bankruptcy conduct was appropriate to take into account, as the adversary proceeding was to some extent "a continuation of the state court litigation in which those orders arose." *Id.* at *76-77. Finding that the debtor engaged in widespread and continuous discovery abuse, the bankruptcy court entered judgment against the debtor.

In *Taylor v. Mitre Corp,* 2012 U.S. Dist. LEXIS 163854 (E.D. Va. 2012), the Court similarly granted the ultimate sanction (there a dismissal of plaintiff's claims) as a result of the plaintiff's spoliation of evidence. There, the Court found that the plaintiff's deletion of 16,000 files by CCleaner three days after a forensic imaging order was entered constituted egregious and willful spoliation and a blatant disregard for the judicial process.

> This Court cannot, and will not, tolerate the use of such a program by a [party] in litigation—in the middle of the discovery—who had knowledge that his computer was about to be searched pursuant to a Court order.... The Court can have no confidence in what was retained or what was not retained by [the spoliating party]. Thus, the undersigned finds that [p]laintiff has unduly prejudiced defendant through his spoliation of evidence.

*Id.* at *23, 29.

Here, Ms. Gunkova's conduct is so egregious and prejudicial that an entry of default judgment is not only appropriate but necessary. Lesser sanctions do not remedy the destruction that has occurred or mitigate the damage caused by Ms. Gunkova while under a clear duty to preserve. A monetary sanction will serve no purpose, as Ms. Gunkova owes millions of dollars in unpaid debts. Further, sanctions of only fees and costs does not remedy the spoliation itself and instead merely puts Mr. Kamin and BNG back in the economic position they were in on the day they discovered the spoliation. The data is lost forever.

Ms. Gunkova has consistently abused the process at a level that is inconsistent with the orderly administration of justice and undermines the integrity of the process. The forensic analysis illustrates the intentional, bad faith permanent destruction of a substantial quantity of relevant evidence, and in fact, the true extent of the damage is unknown as a result of Ms. Gunkova's use of CCleaner. Given that Ms. Gunkova's most recent discovery responses admit that she no longer has other relevant data requested in discovery, it is reasonable to conclude that the 122,563 files and three Devices are likely just the tip of the iceberg as to Ms. Gunkova's spoliation. Ms. Gunkova's misconduct was both egregious as to amount to a forfeiture of her defenses *and* prejudicial to Mr. Kamin to pursue his claims. Ms. Gunkova cannot be allowed to continually destroy hundreds of thousands of files throughout the course of anticipated and pending litigation, thereby handcuffing the pursuit of justice to her benefit. In addition, an award of fees and costs should be awarded in favor of Mr. Kamin and against Ms. Gunkova to compensate for the expenses incurred as a result of Ms. Gunkova's malfeasance.

## III. CONCLUSION

WHEREFORE, Harry Kamin, individually and on behalf of BNG Group LLC, hereby respectfully requests this Court grant the Motion and enter sanctions against Valeria Gunkova to the fullest extent permissible under the law, and for any further relief this Court deems just and proper.

Dated: May 20, 2024

Respectfully submitted,

/s/ Tracey M. Ohm
Marc E. Albert, No. 26096
Tracey M. Ohm, No. 77150
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3020; Fax (202) 572-9999
marc.albert@stinson.com

tracey.ohm@stinson.com

and

Bethany R. Benes, No. 85408
BETHUNE BENES, PLLC
3975 Fair Ridge Drive
South Suite 246
Fairfax, Virginia 22033
Tel.: (703) 260-9325
bbenes@bethunebenes.com

*Counsel for Harry Kamin and BNG Group LLC*

**CERTIFICATE OF SERVICE**

I certify that on this 20th day of May, 2024, I caused a true and correct copy of the foregoing Plaintiffs' Memorandum in Support of Motion for Sanctions Due to Defendant's Spoliation of Evidence to be served via the Court's ECF system upon all counsel who have entered an appearance in this case as follows:

Nancy Greene ndg@ndglaw.com

Tracey Michelle Ohm tracey.ohm@stinson.com, porsche.barnes@stinson.com

Angela L. Shortall ashortall@3cubed-as.com, md70@ecfcbis.com

/s/ Tracey M. Ohm
Tracey M. Ohm