**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: )<br>)<br>VALERIA V. GUNKOVA, )<br>)<br>                    Debtor. )<br>_____)<br>)<br>HARRY KAMIN, )<br>*Individually and derivatively on behalf of* )<br>*BNG Group LLC,* )<br>                    Plaintiff, )<br>)<br>v. )<br>)<br>VALERIA V. GUNKOVA, )<br>)<br>                  Defendant. )<br>_____) | Case No. 23-11261-BFK<br>Chapter 11<br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 23-01062-BFK |

**MEMORANDUM OPINION**

      This matter comes before the Court on the Plaintiff's Motion for Sanctions for Spoliation of Evidence. Docket No. 53. The Defendant filed an Opposition to the Motion. Docket No. 67. The Court held an evidentiary hearing on June 18, 2024, and June 24, 2024. For the reasons stated below, the Court will grant the Plaintiff's Motion. Due to the egregiousness of the Defendant's conduct in deleting and destroying potentially relevant evidence, the Court will grant the most severe form of sanction – a default judgment on non-dischargeability. The Court will declare the debts owed to the Plaintiff, if any, to be non-dischargeable pursuant to Section 523(a)(2)(A) and 523(a)(6). 11 U.S.C. § 523(a)(2)(A) and 523(a)(6).

      The Court further will grant the Plaintiff relief from the automatic stay, *sua sponte,* for the Plaintiff to return to the State Court to obtain a judgment, if any, against the Defendant. If the Plaintiff is successful in State Court, he may execute on whatever assets that: (a) are not exempt

1

under applicable non-bankruptcy law; and (b) are not property of the bankruptcy estate. The Court will enter a separate Judgment Order pursuant to Bankruptcy Rules 7054 (incorporating Federal Rule of Civil Procedure 54(a)) and 7058 (incorporating Federal Rule of Civil Procedure 58(a)), which will be a final, appealable Order in this adversary proceeding.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

A. *The Plaintiff's Investment in BNG.*

1. Valerie V. Gunkova ("Ms. Gunkova," or "the Debtor," or "the Defendant") is an individual residing in Loudoun County, Virginia. She has a degree in business administration from a university in Russia, and a master's degree from a university in the United States. Docket No. 95, Hr'g Tr. 3:19-21.

2. Ms. Gunkova is a 50% member in BNG Group, LLC ("BNG"), which owns an office building in Loudoun County, Virginia. *See* Docket No. 53, Pl. Mot. at p. 2. The other 50% member of BNG is the Plaintiff, Harry Kamin ("Mr. Kamin," or "the Plaintiff"). *Id.*

3. Mr. Kamin alleges that BNG purchased the property for $9,500,000.00 in October 2020, with a mortgage from Atlantic Union Bank. Docket No. 1, Compl. ¶¶ 38, 41. He alleges that he "ultimately loaned more than two million dollars to BNG to accomplish the purchase of the Building." *Id.* at ¶ 39.

4. Ms. Gunkova was the manager for BNG until the appointment of a Chief Restructuring Officer ("CRO") for BNG, as described below. Docket No. 95, Hr'g Tr. 23:18-20.

5. Jacob Bogatin is an individual who resides with Ms. Gunkova. He assists Ms. Gunkova in the management of BNG and Skin Logic, LLC ("Skin Logic" or "Aria"). Docket No. 94, Hr'g Tr. 149:21-150:2. Mr. Bogatin's computer was the main computer for BNG. *Id.* at

77:17-20. Mr. Bogatin described his relationship with Ms. Gunkova as Ms. Gunkova being his "best [better] half." *Id.* at 149:12. Ms. Gunkova testified that Mr. Bogatin handles all financial and marketing matters at Aria, and that Mr. Bogatin is her "right-hand man." Docket No. 95, Hr'g Tr. 12:25-13:3, 14:19-20. His computer was used for both BNG's business and Aria's business. *Id.* at 22:20-21.

6.  Young Yoon acted as BNG's property manager throughout the relevant pre-bankruptcy period. *See id.* at 44:23-25.

B. *Skin Logic d/b/a Aria.*

7.  Ms. Gunkova also owns 100% of Skin Logic, which operates a spa under the name Aria in the BNG building. Docket No. 1, Compl. ¶¶ 11, 12. Skin Logic filed a Voluntary Petition under Subchapter V with this Court on August 24, 2023. Case No. 23-11352-KHK. Stephen A. Metz was appointed as the Subchapter V Trustee. *Id.* at Docket No. 11.

8.  On September 27, 2023, Judge Kindred entered an Order Granting the United States Trustee's Motion to Remove Debtor as Debtor in Possession and to Appoint Subchapter V Trustee as Operating Trustee. *Id.* at Docket No. 47. Mr. Metz was appointed as the Operating Trustee for Skin Logic. *Id.*

9.  Igor Oussenko acted as Aria's Information Technology ("IT") Manager. Docket No. 95, Hr'g Tr. 9:14-17.

C. *The Lawsuit in the Loudoun County Circuit Court.*

10. On February 10, 2021, Mr. Kamin's counsel sent a letter to Ms. Gunkova, demanding the production of certain documents related to BNG's business, and threatening to

take legal action, including injunctive relief, dissociation of Ms. Gunkova as a member of BNG, and/or the judicial dissolution of BNG. Pl. Ex. 2.[1]

11. In March 2021, Mr. Kamin filed a lawsuit against Ms. Gunkova in the Circuit Court of Loudoun County, Virginia. The lawsuit sought relief, both personally and derivatively, on behalf of BNG. Docket No. 53, Pl. Mot. p.3.

12. On September 9, 2022, after a series of discovery skirmishes (*See* Pl. Exs. 3, 4, 5), Mr. Kamin filed a Motion for Sanctions and to Compel Inspection of Electronic Devices for Forensic Analysis, Pl. Ex. 6.

13. On October 25, 2022, the Circuit Court entered an Order compelling Ms. Gunkova to identify "all electronic devices and cloud services containing and/or used to conduct business on behalf of BNG Group, LLC," and to make such devices available for a forensic examination. Pl. Ex. 7 ("the Forensic Order").[2]

14. On November 1, 2022, counsel for the Plaintiff identified a series of search terms to be used in the forensic examination of the devices. Pl. Ex. 11. The Defendant's counsel responded on November 23, 3022. Def. Ex. 12.

15. Mr. Kamin's counsel engaged Christopher Racich of Vestigant, LLC, as his forensic expert in the case. Docket No. 94, Hr'g Tr. 24:5-9. Two Vestigant employees imaged certain BNG devices – 4 computers and 2 iPhones – for the first time on November 22, 2022, at the BNG building ("the First Turnover"). *Id.* at 41:14-15.

---

[1] The Court will refer to the Plaintiff's Exhibits as "Pl. Ex. __," and the Defendant's Exhibits as "Def. Ex. __," throughout these findings.
[2] The Court is not according any collateral estoppel or other preclusive effect to the State Court Orders discussed herein. The Orders in the State Court were not final, appealable Orders. These Findings of Fact are based on the evidence presented in this Court at the June 18 and 24 hearings.

16. Vestigant concluded that 16 storage devices had been attached to the computers. *Id.* at 42:1-9. They requested production of these devices. *Id.* at 42:17-19

17. On December 14, 2022, Vestigant conducted a second examination of the devices ("the Second Turnover"). *Id.* at 44:9-12.

18. Mr. Kamin's counsel also requested credentials for BNG's DropBox account. Pl. Ex. 12. Ms. Gunkova did not provide the credentials. *Id.* at 45:2-3.

19. Ultimately, Ms. Gunkova turned over a total of 34 devices, which Vestigant forensically imaged at BNG's offices. *Id.* at 35:21-23.

20. Vestigant identified five devices of importance, based on Ms. Gunkova's counsel's descriptions of the same:

| Vestigant ID | Gunkova ID | Serial No. | Description of Device |
| --- | --- | --- | --- |
| IT001 | Not Identified | 3W0YQD2 | N/A |
| IT002 | Device 3 and 6 | 6122CH2 | Ms. Gunkova's Computer |
| IT003 | Device 2 | CQYG732 | [Young Yoon's Computer] |
| IT005 | Device 1 | 47GKRP2 | Mr. Bogatin's Computer |
| IT027 | Not Identified | N/A | Mr. Bogatin's Thumb Drive |

Pl. Ex. 34; *see also* Pl. Exs. 9 and 10.

21. Vestigant made copies of the devices and applied the search terms proposed by Mr. Kamin's counsel. *See* Pl. Ex. 11.

22. Vestigant found that a Western Digital external hard drive ("the First External Hard Drive") had been attached to IT001. Docket No. 94, Hr'g Tr. 57:18. It found that the same external hard drive also had been attached to IT002. *Id.* at 58:8-9. The First External Hard Drive was never produced, and Vestigant was not able to analyze its contents. *See* Pl. Ex. 15.

5

23. Vestigant found that a different external hard drive ("the Second External Hard Drive") had been attached to IT003. *See* Pl. Ex. 16. The Second External Hard Drive was attached on November 10, 2022, shortly before the First Turnover on November 22, 2022. *Id.*

24. Vestigant found that a third external hard drive ("the Third External Hard Drive") was attached to Device IT003. Docket No. 94, Hr'g Tr. 67:20-22.

25. Ms. Gunkova's discovery responses in the State court stated that she was "unable to locate" the First, Second and Third External Hard Drives. Pl. Ex. 17, p. 45.

26. Vestigant concluded that CCleaner had been applied to IT001. Docket No. 94, Hr'g Tr. 71:14-15. CCleaner is an application available for purchase on the web.[3] It is designed to delete, or to write over and permanently destroy files and information on computer hard drives. *Id.* at 70:19-24.

27. Plaintiff's Exhibit 25 demonstrates that CCleaner was applied to Devices IT001, IT002 and IT005 on at least nine occasions between the time that the Plaintiff filed his Motion for Forensic Examination on September 9, 2022, and the date of the entry of the Forensic Order on October 25, 2022. Pl. Ex. 25. Additionally, CCleaner was applied on the day that the Forensic Order was entered (October 25, 2022), on multiple occasions before the First Turnover of the Devices on November 22, 2022, and on the day of the Second Turnover of the Devices on December 14, 2022. *Id*. The Defendant did not introduce any evidence to contradict the timeline contained in Plaintiff's Exhibit 25.

28. Mr. Racich testified that CCleaner was used multiple times in a single day. He testified that CCleaner was used on Device IT005 eight times on July 3, 2022, and on IT002 twelve times on October 15, 2022. Docket No. 94, Hr'g Tr 78:1-3; *see also* Pl. Exs. 19, 20.

---

[3] *See* CCLEANER, https://www.ccleaner.com/ccleaner (last visited July 16, 2024).

6

29. As a result of the use of CCleaner, a large volume of data was rendered unreviewable and unrecoverable. Mr. Racich testified that approximately 122,000 files are "gone," and can never be recovered. Docket No. 94, Hr'g Tr. 79:24-80:2. The number of pages that were rendered unreviewable (designated as "Zzzzz") amounted to 1,857 pages. *Id.* at 80:11.

30. The Plaintiff filed a Motion for Sanctions in the Circuit Court. *See* Pl. Ex. 26. The Motion for Sanctions was stayed by the filing of Ms. Gunkova's bankruptcy case.

D. *The Plaintiff Files for Bankruptcy.*

31. On August 3, 2023, Ms. Gunkova filed a Voluntary Petition under Chapter 11 in this Court. Case No. 23-11261-BFK, Docket No. 1.

32. The case was filed as a Subchapter V case. *Id*. Angela Shortall was appointed as the Subchapter V Trustee. *Id*. at Docket No. 8.

33. On September 22, 2023, Mr. Kamin filed a Motion to Appoint the Subchapter V Trustee as Trustee to Operate the Debtor's Business and to Remove the Debtor as Debtor in Possession. Docket No. 55.

34. Ms. Gunkova filed an Opposition to Mr. Kamin's Motion. Docket No. 78.

35. On October 27, 2023, the Court entered a Stipulation and Consent Order Resolving Harry Kamin's Motion to Remove Debtor as Debtor in Possession and Appoint Subchapter V Trustee as Operating Trustee, in which Ms. Shortall was appointed as the Chief Restructuring Officer ("CRO") of BNG. Docket No. 127.

36. As a part of this agreement, Ms. Gunkova filed an Amended Voluntary Petition under which she withdrew her election to proceed under Subchapter V of the Bankruptcy Code. Docket No. 119. The Court entered an Order Discharging the Subchapter V Trustee. Docket No. 128.

37. Ms. Gunkova and Mr. Kamin presently have competing Disclosure Statements pending, which are set to be heard on July 31, 2024. Docket Nos. 199, 214.

38. On October 30, 2023, Mr. Kamin timely filed his Complaint to Determine the Dischargeability of Debts in this adversary proceeding. Case No. 23-01062-BFK, Docket No. 1.

39. The Complaint contains the following two Counts: (a) Count One - Denial of Dischargeability Pursuant to 11 U.S.C. § 523(a)(2) – Fraud; and (b) Count Two – Denial of Dischargeability Pursuant to 11 U.S.C. § 523(a)(6) – Willful and Malicious Injury. *Id.*

40. Ms. Gunkova filed an Answer, generally denying the Complaint's allegations. Docket No. 47.

E. *The Evidence in the Evidentiary Hearing on this Motion.*

41. The Plaintiff called Mr. Racich of Vestigant to testify at the evidentiary hearing on this Motion. Mr. Racich testified to: (a) the use of the First, Second and Third External Hard Drives, and the inability of the Defendant to produce those hard drives; (b) the repeated use of CCleaner; (c) the timing of the use of CCleaner; (d) that CCleaner was most likely applied manually, and its use was not the result of automatic renewals; and (e) a large volume of data (over 122,000 files) was rendered unreviewable and unrecoverable as a result. The Court found Mr. Racich's testimony to be credible.

42. Mr. Bogatin and Ms. Gunkova also testified at the sanctions hearing.

43. Mr. Bogatin is highly educated. He has an MBA, a PhD, and a Doctor of Sciences in finance. Docket No. 94, Hr'g Tr. 140:7-10. He assisted Ms. Gunkova in the management of BNG and Aria. *Id.* at 149:21-150:2.

44. Mr. Bogatin testified that in November 2019, Aria was the subject of a ransomware attack. *Id.* at 141:23-142:2; Def. Ex. 4.

45. As a result, either Mr. Yoon or Mr. Bogatin purchased Malware Bytes in November 2019. Docket No. 94, Hr'g Tr. 143:7-10; *see also* Def. Exs, 1 and 2. They also purchased CCleaner in November 2019. *Id*. at 145:10-13; *see also* Def. Ex. 3.

46. Mr. Bogatin testified that Aria was the subject of a second ransomware attack in November 2020. *Id*. at 146:12-14. Mr. Bogatin and Mr. Yoon were able to recover certain files from Google and DropBox. *Id*. at 148:11-15.

47. QuickBooks was loaded on Mr. Bogatin's computer. *Id*. at 157:18-23. He used QuickBooks for both BNG's and Aria's businesses. *Id*.

48. Mr. Bogatin testified that CCleaner was turned on in response to the ransomware attacks and no one bothered to turn it off. *Id*. at 163:3-6. The Court rejects this suggestion as a factual matter. As Mr. Racich testified, CCleaner was not programmed to run at regular intervals (e.g., at midnight on the first of each month or something similar). *Id*. at 72:16-24. Rather, CCleaner was used in response to the Plaintiff's Motion for a Forensic Examination and afterwards, in advance of the First Turnover and Second Turnover of the devices. Pl. Ex. 25. Further, CCleaner was used multiple times in a single day on more than one occasion.

49. Mr. Bogatin did not testify that he took any steps to prevent the loss of BNG's electronically stored information ("ESI"), nor did he testify that he instructed anyone at BNG to take any steps to prevent to prevent the loss of ESI.

50. Ms. Gunkova testified that she did not purchase any of the computer programs, and that she had "no idea" that CCleaner was being used on any of the computers. Docket No. 95, Hr'g Tr. 10:5-11.

51. The striking thing about Ms. Gunkova's testimony was that, as the manager of BNG, she did not take a single step to preserve any of BNG's ESI from the demand letter of

9

February 2021, to her testimony before this Court on June 24, 2024. She did not instruct Mr. Bogatin, nor BNG's property manager, Mr. Yoon, nor Aria's IT Manager, Mr. Oussenko, at any step in the process that they needed to preserve BNG's ESI – not a single in-person conversation, e-mail or text message concerning the importance of preserving the information.

52. The Court also heard the testimony of Jay M. McDannell, who was Ms. Gunkova's counsel in the State Court lawsuit until he was disqualified in June 2023. Pl. Ex. 27. Mr. McDannell's testimony highlighted the difficulty in protecting personal attorney-client communications (such as Ms. Gunkova's communications with her counsel) when an individual uses her company's computer system for that purpose, as did Ms. Gunkova with BNG's computers. *See* Def. Exs. 18 (McDannell e-mail: "Some of these issues impact my ability to review them for privilege, but <u>all</u> of these issues impact both of our ability to track these documents and use them in litigation") (emphasis in original); *see also* Pl. Ex. 21 (McDannell e-mail: "my goal… is to process them [the documents] in a manner that allows our review of the documents for privilege….)

## Conclusions of Law

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of certain debts).

### I. Bankruptcy Rule 7037.

Spoliation is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). To prove spoliation, "a party must

show: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *David v. Summit Cmty. Bank,* 2023 WL 5615983, at *11 (E.D. Va. Aug. 30, 2023) (quoting *Goodman v. Praxair Servs., Inc.,* 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

Bankruptcy Rule 7037 incorporates Federal Rule of Civil Procedure 37(e), which provides as follows:

> *Failure to Preserve Electronically Stored Information*. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Rule 37(e) was enacted in 2015 as an Amendment to Rule 37. Previously, the 2006 version of Rule 37(e) simply provided: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored

11

information lost as a result of the routine, good-faith operation of an electronic information system." *Id.* (as amended Apr. 12, 2006).

    A.  *When the Duty to Preserve Arose in this Case.*

The Committee Notes on the 2015 Amendment state: "Courts should consider the extent to which a party was on notice that litigation was likely, and that the information would be relevant. A variety of events may alert a party to the prospect of litigation." *Id.* at Comm. Notes on Rules, 2015 Amend. In this case, the Court finds that the duty to preserve evidence arose from the date of Mr. Kamin's demand letter, dated February 10, 2021. Pl. Ex. 2. The demand letter not only threatened legal action, but it also described 15 different categories of information that Mr. Kamin wanted produced.

Alternatively, the filing of the lawsuit a month later in March 2021 gave rise to a duty to preserve electronically stored information. All the spoliation took place after Mr. Kamin filed his lawsuit in Loudoun County.

    B.  *The Egregiousness of the Defendant's Conduct.*

The Court concludes that Ms. Gunkova's destruction of, and failure to preserve, a large volume of data in this case was egregious and unjustified. The three External Hard Drives were never recovered. More than 21,000 files were deleted or rendered unrecoverable. Approximately 1,857 pages were rendered unreviewable.

Ms. Gunkova argues that she personally had nothing to do with the computers, and that she knew nothing about the installation of CCleaner. The courts in the Fourth Circuit, however, apply an agency analysis. *See GMS Indus. Supply, Inc. v. G&S Supply, LLC,* 2022 WL 853626, at *8 (E.D. Va. Mar. 22, 2022) ("A party may be held responsible for the spoliation of relevant evidence done by its agents") (quoting *Goodman,* 632 F. Supp. at 522 n. 16); *In re Abell*, 2016

WL 1556024, at *22 (Bankr. D. Md. Apr. 14, 2016) ("The law of agency is 'directly applicable to a spoliation motion, and the level of culpability of the agent can be imputed to the master.' It is the party's responsibility to ensure that its agents do not spoliate evidence, and a party cannot defeat a spoliation claim by arguing that the agent's spoliation was not done in furtherance of the party's business.") (internal citation omitted). Whoever employed CCleaner acted as Ms. Gunkova's agent in doing so.

Ms. Gunkova and her agents' actions were not just negligent, they were intentional. The three External Hard Drives were never recovered. Her agents repeatedly applied CCleaner to BNG's business computers. The use of such applications designed to delete computer files, or to make them unrecoverable, has been held in this circuit to support a finding of willfulness. *See GMS Indus. Supply, Inc. v. G&S Supply, LLC,* 2022 WL 853626, at *7 (E.D. Va. 2022) (use of File Shredder); *Ericksen v. Kaplan Higher Educ.*, LLC, 2015 WL 6408180 (D. Md. Oct. 21, 2015), *report and recommendation adopted,* 2016 WL 695789 (D. Md. Feb. 22, 2016) (use of CCleaner); *Taylor v. Mitre Corp.*, 2012 WL 5473715, at *6 (E.D. Va. Sept. 10, 2012), *report and recommendation adopted,* 2012 WL 5473573 (E.D. Va. Nov. 8, 2012) (use of Evidence Eliminator); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010), *aff'd in part, modified in part,* 2010 WL 11747756 (D. Md. Nov. 1, 2010) (use of Easy Cleaner and CCleaner); *In re Abell*, 2016 WL, at *13 (use of Wipe Free Space).

The timing of CCleaner's use is particularly important. CCleaner was applied at to Devices IT001, IT002 and IT005 on at least nine occasions between the time that the Plaintiff filed his Motion for Forensic Examination on September 9, 2022, and the date of the entry of the Forensic Order on October 25, 2022. Pl. Ex. 25. Additionally, CCleaner was applied on the day the Forensic Order was entered (October 25, 2022), on multiple occasions before the First

Turnover of the Devices on November 22, 2022, and on the day of the Second Turnover of the Devices on December 14, 2022. *Id.* CCleaner also was used multiple times in a single day on numerous occasions. Mr. Racich testified that on July 3, 2022, CCleaner was used eight times on Device IT005, and twelve times on IT002 on October 15, 2022. Docket No. 94, Hr'g Tr. 78:1-3; *see also* Pl. Exs. 19, 20. The use of CCleaner was not routine, and it was not inadvertent. The Court concludes that Ms. Gunkova and her agents used CCleaner with an intent to deprive the Plaintiff of relevant information.

The same is true with respect to the three External Hard Drives, which were never produced. The information from the three External Hard Drives can never be recovered. The Second External Hard Drive was attached to IT003 on November 10, 2022, shortly before the First Turnover on November 22, 2022. The timing, again, leads the Court to conclude that Ms. Gunkova and her agents acted with an intent to deprive the Plaintiff of relevant information.[4]

C. *The Appropriate Remedy.*

The Court turns to the appropriate remedy, mindful that "the applicable sanction should be molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine." *Silvestri,* 271 F.3d at 590 (internal citation omitted). There is no question that the information on the three External Hard Drives and on the BNG computers would have been relevant to the Loudoun County lawsuit, and to this adversary proceeding.

The Defendant's degree of culpability is very high. As the Court finds above, the loss of the External Hard Drives, as well as the timing of the use of CCleaner, leads the Court to conclude that both actions were taken by Ms. Gunkova's agents with the intent of depriving the

---

[4] In his testimony, Mr. Racich also provided an explanation of Plaintiff's Exhibit 15, which was a list of the various content and electronic folders contained in one of the external hard drives. Docket No. 94, Hr'g Tr 59:15-22. This list included numerous files directly related to the Plaintiff, including copies of his driver's license, bank information, and emails. *See id.* at 60:17-61:2; *see also* Pl. Ex. 15.

Plaintiff of valuable information in the Loudoun County lawsuit, and in this adversary proceeding. This adversary proceeding, of course, did not exist at the time of the spoliation, but it was Ms. Gunkova's choice to file for bankruptcy, which stayed the State Court litigation. The Court concludes that the spoliation that occurred during the Loudoun County lawsuit deprived the Plaintiff of information that would have been relevant to this adversary proceeding.

The Court further finds that the Plaintiff has been deprived of a great deal of relevant information. Over 210,000 files were irretrievably lost. Approximately 1,857 pages were rendered permanently unreviewable. The information cannot be found or replaced by other sources. Some of the files were recovered elsewhere, but it is impossible to know that those files are the same as the original files because the metadata has been corrupted or lost.

The Court understands that a default judgment on non-dischargeability is a harsh sanction. The Court finds, however, that there is no lesser sanction that is appropriate to the level of willful conduct on the part of the Defendant and her agents, nor is there a lesser sanction that could possibly restore the Plaintiff to the position to which he is entitled.

The Court finds that a judgment of non-dischargeability is the only appropriate sanction in this case.

    **II.**    **Relief From the Automatic Stay.**

Having determined that a default judgment on non-dischargeability is appropriate in this case, the Court turns to the question of how to proceed from here. The Court decides, *sua sponte*, to return the parties to the State Court.

Bankruptcy Code Section 362 provides for relief from the automatic stay for cause. 11. U.S.C. § 362(d)(1). The term "cause" is not defined in the Code.

In the case of whether to permit litigation to proceed against debtors in a non-bankruptcy forum, the Fourth Circuit has held that bankruptcy courts should consider: (a) whether the claims involve only state law; (b) judicial economy and the efficient administration of the bankruptcy estate; and (c) protection of the bankruptcy estate. *Robbins v. Robbins (In re Robbins),* 964 F.2d 342, 345 (4th Cir. 1992), *as amended* (May 27, 1992). The Court will address each of these factors, below.

  A. *The Remaining Claims Involve Only State Law.*

The Court has determined, above, that any debts that Ms. Gunkova owes to Mr. Kamin are not dischargeable under Bankruptcy Code Sections 523(a)(2)(A) and (a)(6). All the remaining issues in the case are issues of State law. The State law issues are not particularly novel or difficult, but they do not require the specialized knowledge of the Bankruptcy Court for resolution. Importantly, the Court is not making any determination that Ms. Gunkova is liable as a matter of State law, nor that Mr. Kamin suffered any amount of damages as a result. The Court is simply making a final determination that if the Defendant is found to be liable to the Plaintiff in State Court, and if the Plaintiff is awarded damages, that judgment will be non-dischargeable under Section 523(a) of the Bankruptcy Code.

This factor weighs heavily in favor of relief for the automatic stay (or abstention, as discussed below).

  B. *Judicial Economy and the Efficient Administration of*
    *The Bankruptcy Estate.*

This Court will continue to administer Ms. Gunkova's bankruptcy case, including the pending Disclosure Statements, a Plan confirmation hearing, and any related matters. Again, the Court is not making any determination on Ms. Gunkova's liability, nor on the amount of Mr. Kamin's damages, under State law at this stage of the case. The issues of State law liability and

damages, if any, will be for the State Court to resolve. Collateral estoppel might be applied in the State Court arising from the Court's findings in this adversary proceeding. This Court may make additional findings of fact in connection with the Plan confirmation process that may be entitled to collateral estoppel. Any decision to apply collateral estoppel resulting from this Opinion will be the province of the State Court. On the other hand, there could be collateral estoppel effects resulting from a final State Court Order, when the State Court lawsuit is resolved with the entry of a final judgment.

This factor also weighs in favor of relief from the automatic stay (or abstention).

C.    *Protection of the Bankruptcy Estate.*

Finally, the Court addresses protection of the bankruptcy estate. There are really two issues here. The first is that of the Defendant's exempt property. Unless the case is dismissed, Ms. Gunkova is entitled to her exemptions. *See* 11 U.S.C. § 522(c) ("property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case," with certain exceptions not relevant here).[5] Ms. Gunkova is not being denied a discharge under Section 727 of the Bankruptcy Code. Rather, the Court is entering default judgment on Mr. Kamin's claims under Section 523(a) of the Code. She may be entitled to a discharge under Bankruptcy Code Section 1141, if she completes all the payments under a confirmed plan. *See* 11 U.S.C. §1141(d)(5)(A). The Court, therefore, will order that Mr. Kamin, if he is successful in the State Court litigation, may not execute on any of Ms. Gunkova's exempt property, unless and until this case is dismissed.

---

[5] Virginia has opted out of the Bankruptcy Code exemptions. Va. Code Ann. § 34-3.1. Ms. Gunkova's exemptions, therefore, are determined under State law.

Second, the Court will protect any property of the bankruptcy estate by ordering that Mr. Kamin, if successful in the State Court litigation, may not execute on property that is property of the bankruptcy estate under Section 541(a) of the Bankruptcy Code. The Court notes that Ms. Gunkova's 50% membership interest in BNG is property of the bankruptcy estate, as is her 100% membership interest in Aria. The State Court may adjust the parties' capital accounts in BNG as a result of the evidence introduced there, but Mr. Kamin is not entitled to execute on any judgment in his favor against Ms. Gunkova's membership interests without further leave of this Court. Ordinarily, a charging order would be the method by which to execute on a membership interest in a limited liability company. Va. Code Ann. § 13.1-1041.1. Mr. Kamin, if successful in the State Court litigation, will continue to be stayed by the automatic stay from seeking a charging order against Ms. Gunkova's membership interests in BNG and Aria, unless and until this Court grants further relief from the automatic stay.

The Court concludes, therefore, that Mr. Kamin will be granted relief from the automatic stay to pursue his claims to a final judgment in the State Court, and if he is successful in obtaining a judgment against Ms. Gunkova, to execute on property that: (a) is not exempt; and (b) is not property of the bankruptcy estate.[6]

## Conclusion

The Court, therefore, will enter a separate Judgment Order, under which:

A.    The debts owed by Ms. Gunkova to Mr. Kamin, if any, will be determined to be non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

---

[6] Alternatively, the Court will abstain from hearing this adversary proceeding, for the reasons stated above. 28 U.S.C. § 1334(c)(1) ("Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.")

B.    Mr. Kamin will be granted relief from the automatic stay under 11 U.S.C. § 362(d)(1) to proceed to a final judgment in the State court, and if successful in obtaining a judgment against Ms. Gunkova, to execute on property that: (a) is not exempt; and (b) is not property of the bankruptcy estate. Alternatively, the Court will abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1).

C.    The Clerk will mail copies of this Memorandum Opinion together with the accompanying Judgment Order, or will provide cm-ecf notice of their entry, to the parties below.

Date: Jul 24 2024

/s/ Brian F Kenney

The Honorable Brian F. Kenney
Alexandria, Virginia                United States Bankruptcy Judge

Entered On Docket: Jul 25 2024

Copies to:

Harry Kamin
c/o Bethany Benes, Esq.
3975 Fair Ridge Drive, South Bldg.
Suite 246
Fairfax, VA 22033-2911
*Plaintiff*

Bethany R. Benes
3975 Fair Ridge Drive, South Bldg.
Suite 246
Fairfax, VA 22033
*Counsel for Plaintiff*

Tracy M. Ohm
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
*Counsel for Plaintiff*

Valeria V. Gunkova
20701 Riptide Sq.
Sterling, VA 20165
*Defendant*

Nancy Greene
3977 Chain Bridge Road, Suite 1
Fairfax, VA 22030
*Counsel for Defendant*